IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JAMES FRIEDLUND,

                  Plaintiff,                        OPINION AND ORDER

    v.

                                        14-cv-301-wmc

CAROLYN COLVIN, Acting Commissioner of
Social Security,

                  Defendant.

Pursuant to 42 U.S.C. § 405(g), plaintiff James Friedlund seeks judicial review of a final determination that he was not disabled within the meaning of the Social Security Act. After full briefing, the court heard oral argument on June 2, 2016, to consider plaintiff's principal contentions that: (1) the administrative law judge ("ALJ") erred in determining that Friedlund's mental impairments did not rise to the level of severe impairments; (2) the ALJ lacked a sufficient basis to find Friedlund not disabled at step five of the evaluative process established by the Social Security Administration ("SSA"); and (3) the ALJ failed to develop the record adequately by having a physician review additional medical evidence. For the reasons provided below and discussed during oral argument, the court will remand for further consideration of Friedlund's capability to work at step five.

BACKGROUND[1]

## A. RFC Determination

Plaintiff James Friedlund claims a disability onset date of February 28, 2011, based on an inability to work due to problems with his hip, knees and back, for which he had multiple surgeries, as well as depression, anxiety and asthma.  In reaching his decision, the ALJ credited Friedlund's claim to four, severe impairments: status post total left knee and total right hip replacement, degenerative disc disease, status post left shoulder arthroscopy and obesity.  (AR 20.)  In contrast, after noting reasons to doubt Friedlund's credibility, the ALJ found that Friedlund's depressive and anxiety disorders, and his two, medically-determinable mental impairments, were not severe.  (AR 21.)  In arriving at the latter determinations, the ALJ credited the opinions of the state agency psychological consultants, who reached the same conclusion.  (AR 21.)  Finally, after according "great weight" to state agency medical consultants, the ALJ determined that Friedlund could perform some light work despite limitations in his residual functional capacity ("RFC").[2]  (AR 25-27.)  Specifically, the ALJ found that Friedlund:

---

[1] As discussed in more detail in the ALJ's written decision, the parties' briefs and during oral argument, the following is a brief summary of the most pertinent background facts drawn from the administrative record ("AR").  (Dkt. #5.)

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with additional limitations.  He is precluded from any crawling, kneeling or climbing of ladders, ropes, or scaffolds.  He is precluded from more than occasional stooping, bending, crouching, or climbing ramps or stairs.

(AR 23.)

Central to plaintiff's challenge on appeal, he faults the ALJ for discounting the significance of additional medical records from appointments and procedures that post-dated the SSA's denial of his application, particularly without an opinion from his treating physician or a state agency medical consultant as to how this additional evidence might affect Friedlund's residual functional capacity, if at all.  Instead, the ALJ himself opined in an additional paragraph of his decision that this new evidence did not support finding limitations that rose to the level claimed by Friedlund.  (AR 25.)

## B.  Discussion with the VE

At plaintiff's hearing, the ALJ asked the VE whether the skills Friedlund learned as a sheet metal worker were transferrable to other light work, to which the VE responded with a list of several transferrable skills.  (AR 62-63.)  The ALJ then asked the VE whether a hypothetical claimant with Friedlund's "age, education and work history" could perform any jobs in Wisconsin if "limited to light work," precluded from "any crawling, kneeling or climbing of ropes, ladders or scaffolds," and unable to undertake "more than occasional stooping, bending, crouching or climbing of ramps or stairs." (AR 63.)   In response, the VE named several jobs listed in the Dictionary of Occupational Titles, such as security guard, general office clerk, health care support

worker, stock clerk and sales representative.   (AR 63-64.)   The ALJ asked no further questions of the VE.

Later, in his written decision, the ALJ held that the "[t]ransferrability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferrable job skills." (AR 27.)  The ALJ went on to explain that:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.11.   However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.   To determine the extent to which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy.   The vocational expert testified that, given all of these factors, the individual would be able to perform representative occupations such as: security guard (6,700 jobs in Wisconsin), office clerk (10,000 jobs in Wisconsin), health care support worker (1,500 jobs in Wisconsin), stock clerk (8,000 jobs in Wisconsin), and sales representative (3,300 jobs in Wisconsin).   I find this to be a significant number of jobs.
>
> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
> Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of performing other work that exists in significant numbers in the national economy.   A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

(AR 27-28.)

OPINION

## I.    Mental Impairments

Plaintiff argues that the ALJ erred by assigning only mild limitations to his depressive and anxiety disorders, and as a direct result, by failing to incorporate any limitations based on those mental impairments into his residual functional capacity. Plaintiff's support in his summary judgment briefing consisted largely of citation to evidence of his mental impairments in the record that plaintiff claims the ALJ ignored, and his counsel went little further at oral argument.  Contrary to plaintiff's assertions, however, the ALJ's assessment of Friedlund's mental impairments in his written decision is supported by substantial record evidence and written with sufficient clarity to deny remand on this basis.  *Cf. Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) ("[W]here the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded.").

In particular, the ALJ addressed Friedlund's mental impairments by assessing the record evidence under the four-step framework set forth in 20 C.F.R. § 404.1520a, the applicability of which plaintiff does not challenge.  Furthermore, the ALJ provided sound reasons for discounting the assessment of Dr. Walters, who evaluated Friedlund in person but, as the ALJ noted, only did so once and relied primarily on his self-reported symptoms in reaching her opinions.  Even if the ALJ had given greater weight to Walters's assessment than those of the state agency psychological consultants, she did not describe any specific limitations caused by Friedlund's mental impairments that would (more than mildly) impact his residual functional capacity.  On the contrary,

Walters assigned Friedlund a GAF (global assessment of functioning) score of 60, which plaintiff's counsel conceded at oral argument is on the borderline between moderate and mild limitations.[3]   On the basis of the ALJ's assessment of Friedlund's mental impairments alone, therefore, remand would be unnecessary.

## II.    Step Five Determination

Given the discussion that unfolded between the ALJ and the VE at the hearing, plaintiff also argues the ALJ committed fatal error at step five of his written decision. Specifically, plaintiff points to portions of the ALJ's decision in which he states that it is "not material" whether Friedlund's skills are transferrable, revealing an intent to explore with the VE the extent to which Freidlund's limitations restricted his ability to do unskilled light work.  This intent, plaintiff points out, appears to conflict both with the discussion at the hearing and with the jobs the ALJ listed in his decision as available to Friedlund based on the VE's testimony.

As excerpted above, the ALJ began by asking the VE at Friedlund's hearing whether he acquired any transferrable skills from earlier experience as a sheet metal worker.  After the VE replied that Friedlund *did* have transferrable skills, the ALJ then asked whether a hypothetical claimant with Friedlund's characteristics and a residual functional capacity to perform light work could find employment in Wisconsin.  Notably, the ALJ did *not* ask the VE to limit his response to a hypothetical claimant who could

---

[3] An individual with a GAF score between 61 and 70 experiences some mild symptoms, while a GAF score between 71 and 100 signifies an individual experiencing only transient symptoms of impairment to no symptoms at all.   (https://en.wikipedia.org/wiki/Global_Assessment_of_Functioning).

perform only *unskilled* work.  Indeed, in light of the questions the ALJ did pose and the VE's responses, the he apparently did not intend to do so.

The Commissioner concedes that none of the jobs listed by the VE in response to the ALJ's hypothetical are unskilled.  The Commissioner also concedes, as she must, that a discrepancy exists between the ALJ's discussion with the VE at the hearing and his written decision at step five.  The Commissioner contends, however, that any apparent error regarding the ALJ's application of the VE's testimony to his analysis at step five is harmless, both because:  (1) the ALJ impliedly determined that Friedlund has transferrable skills qualifying him for the jobs the VE listed; and (2) applying the "grid rule" would direct a finding of non-disability regardless of the ALJ's finding that Friedlund had transferrable skills or was capable of doing more than unskilled work.

Certainly, the Seventh Circuit has applied the harmless error doctrine in reviewing an ALJ's decision denying Social Security benefits.  *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).  In doing so, however, the Seventh Circuit has warned against applying harmless error in circumstances where the reviewing court cannot "say with great confidence" that the ALJ would reach the same result on remand or must provide its own rationale for the ALJ's decision.  *McKinsey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011).  With that admonition in mind, the court cannot agree with the Commissioner that the ALJ's erroneous application of the VE's testimony to his step five determination is harmless.  While the ALJ may have implicitly determined (and at least as framed by the ALJ's questions, the VE's testimony certainly provided a basis for him to determine) that Friedlund has transferrable skills and is qualified for jobs requiring some skill, this court

7

cannot uphold an ALJ's decision on the basis of evidence on which he or she did not appear to rely. *See Spiva*, 628 F.3d at 348 (collecting cases) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)).

The Commissioner's argument that the grid rule, along with Social Security Ruling 85-15, nevertheless directs a finding of non-disability has more merit, but it again leaves an inadequate basis to deny remand, particularly since the Commissioner only made the argument at oral argument. Whether the record, including the VE's testimony, supports the application of the applicable grid rule to determine that Friedlund is not disabled is a question the ALJ must address on remand, not one that can be answered by this court sitting on review. Accordingly, remand to the ALJ for further consideration of Friedlund's capability at step five is required.[4]

## III. Additional Evidence

Having already found cause for remand, the court will only briefly address plaintiff's remaining argument that the ALJ's determination of Friedlund's RFC was inadequate because he failed to properly develop the record as to additional medical evidence. As an initial matter, the ALJ *did* address Friedlund's additional medical

---

[4] In his summary judgment briefs, plaintiff requests reassignment to a different ALJ in the event of remand, but offers no argument as to why reassignment is required. Given this court's finding that the ALJ's opinion was thoughtful and well-reasoned, and there are no indications that he behaved inappropriately, the court finds no basis for plaintiff's request for reassignment. *Cf. Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (urging reassignment due to concern about "the ALJ's inappropriate 'jokes' about dead Social Security claimants"); *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (reassignment warranted when the Seventh Circuit was "unable to determine how -- apart from substituting his own judgment for that of the medical witnesses -- the ALJ reached his determination regarding the degree of [the claimant's] impairments").

evidence in his written decision.  (AR 25.)  While it is arguable that the ALJ should have analyzed the additional evidence more thoroughly, it is not apparent that the discussion fell so short that remand is now required.  *See, e.g., Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (the ALJ playing doctor is "a clear no-no"); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (the ALJ cannot "cherry-pick" medical evidence from mixed records to support a denial of benefits).

More importantly, plaintiff's counsel had difficulty articulating in summary judgment briefing, as well as at oral argument, precisely what information in Friedlund's additional medical evidence required the ALJ to solicit review by a medical professional or add limitations to Friedlund's RFC.  While "the ALJ has a duty to develop a full and fair record," *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000), that duty "can reasonably require only so much."  *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004).  As the Commissioner points out, it is likewise "axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."  *Scheck*, 357 F.3d at 702.  With respect to that burden, plaintiff's counsel confirmed at oral argument that Friedlund failed to submit the additional medical records to any physician for formal review of its possible impact on his RFC.[5]

Remand for review of additional medical evidence for by a physician is required when that evidence is not only new but also "potentially decisive."  *Goins*, 764 F.3d at 680.  In light of plaintiff's failure to establish the import of Friedlund's additional evidence, the record here falls short of other cases in which the Seventh Circuit found

---

[5] In fairness, this may have been due to practical concerns of time and expense, although plaintiff's counsel did not indicate this was so.

remand was required. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (ALJ erred in finding that new MRI and recommendations were "similar" to earlier evidence); *Goins,* 764 F.3d at 680-82 (new medical records noted "serious" and "grave" results). Accordingly, the ALJ's failure to submit Friedlund's additional medical evidence for review by a physician does not provide cause for remand.[6]

## ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff's application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 26th day of August, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
U.S. District Court Judge

---

[6] Of course, since the ALJ's decision must be remanded for a reassessment of Friedlund's capabilities at step five, the ALJ is welcome to supplement the record regarding Freidlund's additional evidence, just as he may choose to reconsider the possible impact of Friedlund's mental health limitations on his RFC.